THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD SMITH (Impleaded), Defendant-Appellant.

First District (2nd Division)   No. 62415

Opinion filed September 7, 1976.

James R. Streicker and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Donald Smith, was charged with two counts of armed robbery. (Ill. Rev. Stat. 1973, ch. 38, par. 18—2.) After a bench trial, defendant was found guilty as charged and sentenced to 8 to 24 years' imprisonment. Defendant now appeals and presents three issues for our review: (1) whether the State, by delaying indictment of defendant and by failing to respond to defendant's request for discovery, violated defendant's right to due process by forcing defendant to trial with unprepared counsel; (2) whether the trial court erred in finding defendant guilty of both counts of armed robbery; and (3) whether defendant's sentence was excessive in light of an accomplice's lesser sentence. A summary of the facts follows.

Charlie Berry owned a barber shop. He was in his shop with a friend, Frank Madison, and was working on a customer when defendant entered. Defendant stated that he wanted a haircut and sat down to wait. While defendant waited, he was joined by another individual who indicated that he was with defendant. As Berry worked on the customer, defendant produced a gun and announced, "This is a stick-up."

Defendant took an overnight bag from a display counter and forced Berry and the customer into a back room. On defendant's order, the other individual forced Madison into the back room also. Once there, both Berry and Madison were relieved of their wallets, but the customer was not robbed. Defendant and his accomplice then locked their victims in the back room, rifled the cash register for coins, and departed.

After 5 or 10 minutes, the victims managed to break out of the room, and upon going out to the street, observed their assailants in the custody of the police.

The evidence disclosed that some youths had observed the robbery in progress and summoned the police to the scene. Upon arrival, the police saw no one in the shop, but did observe defendant and his accomplice running down an alley. Although ordered to stop, both men continued to flee. Defendant was pursued, apprehended, and found to be in possession of a revolver, a wallet, and an overnight bag containing $7.50 in coins. Defendant's accomplice was also apprehended nearby.

Both men were brought back to the barber shop and instantly identified by Berry and Madison as the perpetrators of the robbery. Berry later identified the wallet and overnight bag recovered from defendant as his property which was taken during the robbery.

Defendant admitted being in the barber shop but said he went to the shop to collect $100 owed him by Berry. Defendant asserted that Berry conducted gambling games in the rear of the shop and had borrowed $100 from defendant the previous week while they had been gambling.

On the day in question, defendant went to the shop armed with a gun because Berry and Madison were known to carry weapons. When

defendant entered the shop, Berry was busy with a customer and told defendant to wait. While waiting, he was joined by a friend. At this time, there were five or six individuals gambling in the back. Defendant became impatient waiting for Berry, and he and Berry got into an argument.

Both men went into the back, and, although a scuffle ensued, neither man drew a gun. Defendant left the shop without getting any money and started down the alley to join his friend who had left earlier when the fight broke out.

Just as defendant was about to enter his friend's house, a police officer arrived with his gun drawn. He did not run from the officer, nor did he have a wallet or overnight bag when arrested.

Defendant initially contends that because the State delayed indicting him and failed to respond to his request for discovery, he was denied due process by being forced to trial with unprepared counsel.

Defendant was arrested on August 9, 1974, and thereafter remained in custody, but was not indicted until November 18, 1974. On December 4, 1974, defendant was arraigned and counsel appointed to represent him. On that same date, defendant's counsel served the State with a motion for discovery. On December 6, 1974, the 120th day of defendant's incarceration, his case was called for trial.

Defendant's counsel answered ready and demanded trial. After the court informed defendant of his right to a jury trial and after defendant waived that right, the following colloquy occurred:

"Defendant's counsel: For the record, I would state that I am not actually prepared for trial, and it is against my recommendation to go to trial today. However, I will defend him to the best of my ability.

Defendant: Your Honor, I don't have but two or three questions to ask, that's all. I'm ready for trial.

Court: You understand that your attorney hasn't had much time to go into this.

Defendant's counsel: He thinks it is not necessary.

Court: All right. Well, have you discussed it?

Defendant's counsel: Yes, your Honor, we have discussed it."

On these facts, defendant now argues that he was faced with the unconscionable choice of choosing to waive his right to a speedy trial or his right to competent representation.

Illinois has statutorily implemented a defendant's right to a speedy trial with what is known as the Fourth Term Act. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5.) Under the Act, unless a defendant occasions delay, a defendant in custody must be tried within 120 days of his arrest, or discharged. While it would be impermissible to force a defendant to

make a prejudicial choice between discharge under the Act and competent representation (*People v. Lee*, 27 Ill. App. 3d 712, 327 N.E.2d 574), the fact that defendant is forced to make a choice is not, by itself, a denial of due process. *People v. Lewis*, 60 Ill. 2d 152, 330 N.E.2d 857; *People v. Johnson*, 45 Ill. 2d 38, 257 N.E.2d 3.

Thus, in the instant case, the mere fact that defendant was not arraigned and counsel appointed until the 118th day of his incarceration is not, by itself, a denial of due process. Rather, in such situations, we are required to carefully examine the record and ascertain whether defendant was prejudiced in any way by such a procedure. *People v. Williams*, 59 Ill. 2d 402, 320 N.E.2d 849.

■■ Defendant makes two claims of prejudice. First, defendant claims that he was prejudiced by the State's failure to respond to his motion for discovery filed two days before trial. However, defendant proceeded to trial without complaint or notice to the court of this failure. The absence of any such complaint by defendant at trial is understandable since even now, on appeal, defendant has not suggested, nor can we envision, any prejudice that resulted from this failure. Defendant points to no prior testimony or reports which he was unable to utilize at trial or with which he was surprised. Indeed, it was defendant who introduced a police report into evidence. While the failure of the State to respond to discovery is to be condemned and discouraged, there is simply no indication in this record that the defense was hampered by the prosecution's failure to provide discovery, or that the defense would have benefited by any response to defendant's discovery motion.

Defendant's second claim of prejudice involves counsel's failure to present witnesses in support of defendant's version of the incident. Although unclear from his brief, defendant is apparently referring to the individuals allegedly gambling in the rear of the barber shop at the time of the incident.

There are only two references in the present record to these individuals. The first occurs during defendant's direct examination. The second occurs during defendant's cross-examination. During cross-examination, defendant testified that he expected these individuals to appear for him on the 19th. The examination continued:

> "Prosecutor: Who is going to be here on the 19th, who do you expect on the 19th?
> Defense counsel: I object. He said he doesn't know for sure, he just talked to some people.
> Court: Overruled.
> Defense counsel: Judge, the defendant answered ready for trial, we are going to trial with the witnesses—
> Court: Overruled."

The matter was then abandoned.

Now, on appeal, defendant has not offered any additional information concerning these individuals. There is nothing in the record to indicate that counsel did not question defendant regarding these individuals and then determine either that they did not exist or that their testimony would not aid defendant. Indeed, counsel's remarks during the above colloquy indicate that counsel did question defendant regarding these individuals and a conscious decision was made to proceed without them. And, as evidenced in the colloquy that occurred prior to trial and after a discussion with his attorney, defendant, not a novice to criminal proceedings,[1] did not think further investigation was necessary, but had only "two or three questions to ask."

██ We can only conclude that, for whatever reason, defendant and counsel chose to proceed to trial without the testimony of the questioned individuals. (See *People v. Williams*.) Any claim of prejudice that further investigation would have produced favorable testimony from these individuals is pure speculation. However, a claim of prejudice cannot be based on mere conjecture. (*People v. Thomas*, 51 Ill. 2d 39, 280 N.E.2d 433.) We will not indulge in such conjecture, and we find no support for defendant's claims that he was prejudiced by the procedure employed below.

██ Moreover, our own independent examination of the record reveals no resultant prejudice from the procedure employed below. Defendant's counsel vigorously cross-examined the State's witnesses and ably presented defendant's version of the incident to the trial judge. That counsel was unable to obtain an acquittal for defendant was not due to counsel's alleged lack of preparation, the delay in the arraignment, or the State's failure to respond to discovery. Defendant was convicted because of the overwhelming evidence of his guilt. Defendant was positively identified by both his victims and was apprehended moments after the robbery with the victim's wallet and overnight bag in his possession. No additional preparation would have aided defendant, and thus, there was no error in the chronology of events below.

Two additional comments are necessary. The State has never offered any explanation for the delay in indicting and arraigning defendant. Such unexplained delay is to be discouraged. It is a "practice which harbors the danger of denying the defendant the effective assistance of counsel." (*People v. Williams*, 59 Ill. 2d 402, 406.) Although we find no prejudice resulting from such a delay, we are compelled to remind the State that there is an invitation to injustice by such conduct. The appearance of impropriety is often as damaging as impropriety itself. Nor can we approve of defense counsel's attempt to inject error into the record at the very outset of trial. Counsel originally answered ready and demanded

---

[1] Defendant's extensive criminal record will be discussed later.

trial. However, minutes later, counsel was representing to the court that he was not actually prepared for trial and was "objecting for the record." From counsel's remarks during trial, it seems that the desirability of requesting a continuance had been discussed and rejected. In any event, we do not condone counsel's endeavor to "have it both ways."

Defendant next argues that the trial court erred in finding him guilty of both counts of armed robbery. Defendant argues that the armed robbery of Berry and Madison was "obviously a single act, motivated by a single intent," and therefore, defendant's conviction for one of the armed robberies should be vacated.

■■ Defendant correctly cites *People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1, for the proposition that two convictions for a single act cannot be sustained. In *Lilly*, a single assault upon one victim was held insufficient to sustain convictions for rape and indecent liberties. However, in the instant case, there was more than one act committed against one individual. The conduct of defendant and his accomplice constituted two separate criminal acts, the armed robbery of Berry and the armed robbery of Madison. Such conduct does not fall within the parameters of *Lilly*.

Rather, such conduct is governed by the general rule that offenses involving separate elements and separate victims will sustain separate convictions. (*People v. Davis*, 20 Ill. App. 3d 948, 314 N.E.2d 723.) Where one or more individuals robs separate individuals, the crimes, though related in time, will support separate convictions. *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601.

We are aware of contrary holdings in *People v. Butler*, 31 Ill. App. 3d 433, 334 N.E.2d 831, and *People v. Thomas*, 37 Ill. App. 3d 55, 347 N.E.2d 264. However, we find the dissent in *Butler* more persuasive and note that the Illinois Supreme Court has granted leave to appeal in *Butler* (61 Ill. 2d 598.) In any event, on the facts of this case, we find the rule announced in *Prim* to be controlling. The trial court did not err in finding defendant guilty of both counts of armed robbery.

Defendant finally argues that in light of his accomplice's lesser sentence, his own sentence is excessive. Defendant was sentenced to a term of 8 to 24 years imprisonment. After defendant had been sentenced, defendant's accomplice pled guilty to the same two counts of armed robbery and was sentenced to a term of 6 to 8 years imprisonment. Defendant now argues that in light of his accomplice's lesser sentence, his own sentence should be reduced.

■■ Defendant's accomplice was not tried with defendant. Thus, the instant record is completely silent as to his accomplice's prior criminal record and the circumstances relating to his prosecution and sentence. Consequently, it is impossible for this court to determine the propriety of

defendant's sentence vis-a-vis his accomplice's sentence. Instead, we will examine defendant's sentence in light of his own prior criminal record.

When sentenced, defendant was 57 years old and had a prior criminal record dating back to 1935 that involved at least 13 different felonies in two States. Indeed, the pre-sentence report states that defendant told an investigator that the reason he moved to Illinois from Michigan was that "what is a petty crime in Chicago is a felony in Detroit, Michigan." After reading the pre-sentence report, the able trial judge stated:

"Well, Mr. Smith, you are one of the few people who has come up before me who by your past record has demonstrated that you have almost forfeited—not almost, I think you probably have forfeited your right to freedom."

We agree, and, in light of defendant's prior criminal record, we are not persuaded to reduce defendant's sentence.

For the reasons set out above, the convictions and sentence are affirmed.

Affirmed.

DOWNING and JIGANTI, JJ., concur.