THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CURTIS L. JOHNSON, Defendant-Appellant.

Fifth District   No. 77-83

Opinion filed November 9, 1978.

FRIEDMAN, J., dissenting.

Michael J. Rosborough and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Ann E. Singleton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Curtis Johnson, entered a negotiated plea of guilty in the Circuit Court of St. Clair County to an indictment charging murder and was sentenced to a term of 14 to 20 years imprisonment. Defendant appeals the trial court's denial of his motion to withdraw his guilty plea contending that his plea was a result of coercion by his attorney, thus rendering it involuntary, and that there was an insufficient factual basis to support his guilty plea to the charge of murder.

Defendant was indicted on October 16, 1975, for the offense of murder allegedly committed on September 3, 1975. Defendant was represented by an assistant public defender at his arraignment on October 22, 1975, at which time he pleaded not guilty to the charge; however, he informed the court on that date that his attorney was Robert Godfrey and that although he had not yet paid Godfrey to represent him, he intended to do so. For the purposes of the arraignment, the assistant public defender continued to represent the defendant with the understanding that if Godfrey desired to enter the case the public defender would withdraw. On October 31, 1975, Robert Godfrey, acting for the defendant, filed a motion for discovery. Thereafter, on November 18, 1975, Godfrey appeared in open court with the defendant and moved orally for a continuance which was granted. On December 29, 1975, a motion to suppress was filed on behalf of the defendant through his attorney, Robert Mays, who was acting as co-counsel with Robert Godfrey. The case was called for trial on January 21, 1976, at which time Godfrey, with the defendant's consent, requested that the cause be continued. This motion for continuance was granted and the matter was set down for trial on February 18, 1976.

Immediately prior to the commencement of trial on February 18, 1976, defendant informed the court that he wished to have a bench trial and that he was waiving his right to a jury trial. Godfrey related to the court that he had discussed this matter with the defendant and that he had advised him of the alternatives. Defendant at that point informed the court that he wished to have a new lawyer appointed. For his explanation, defendant stated "[b]ecause he say that, you know, we're not getting along, I feel that I'm defending myself because he's saying that you can't, you know, what he can't do for me, you know." Thereafter the following colloquy occurred:

"THE COURT: Well, as I indicated to you yesterday, Mr. Johnson, Mr. Godfrey is a very good lawyer, has tried many cases before this court.

THE DEFENDANT: Yes, sir.

THE COURT: You may be in disagreement with what Mr. Godfrey tells you the evidence is going to be against you in this case.

THE DEFENDANT: This is why I wanted a new lawyer.

THE COURT: Well, let me finish. But that doesn't mean that you're entitled to a new lawyer. The new lawyer more than likely would tell you the same thing. The evidence, what Mr. Godfrey is probably trying to tell you is, what the State is going to be able to prove against you—

THE DEFENDANT: We haven't had no motions or nothing.

THE COURT: There's a motion on file. We're going to hear, Mr. Johnson, we're going to hear your motion to suppress as a part of the trial. Since its a bench trial we're going to hear it at the same time.

THE DEFENDANT: He haven't set up no defense for this case.

THE COURT: Well, yesterday do you recall when I told you to give him the names of any witnesses you wanted him to call?

THE DEFENDANT: Yes.

THE COURT: Did you do that?

THE DEFENDANT: Yeah, I gave him that.

THE COURT: Okay. Are they here?

THE DEFENDANT: No, not that I see. I don't see them.

THE COURT: Well, if they're subpoenaed, we'll get them here.

THE DEFENDANT: What I'm saying, me and him hasn't really sit down and discuss my case.

THE COURT: Well, Mr. Johnson, what I told you yesterday was, this is the second time within a month this case has been on my docket. I'm not going to continue it to allow you to get a new lawyer. As far as this Court is concerned, your motion to have this

Court allow Mr. Godfrey to withdraw, or allow you to have new counsel is not timely. It should have been filed long before now. It's not been filed, and accordingly, I don't see that there's any reason that I should grant you a continuance.

THE DEFENDANT: Yes, sir."

The State presented its opening statement and the testimony of its first witness, Devie Williams. Ms. Williams testified that she had accompanied the defendant and Otis Williams to a restaurant on September 3, 1975. She took along a bag which had her belongings in it and a dismantled sawed-off shotgun belonging to the defendant. She was not carrying shotgun shells in her bag, but she stated that she had seen some in the defendant's shirt pocket.

Upon arriving at the restaurant, Ms. Williams and the defendant went inside and placed an order to take out. While awaiting their order, Ms. Williams and the defendant went outside where the defendant took the shotgun from her purse, assembled it and loaded it. Ms. Williams related that the defendant wrapped the shotgun in a towel and followed her into the restaurant to pick up their order. Once inside, the defendant began to argue with a male customer who was looking at Ms. Williams. The couple returned to their automobile, which was parked in front of the restaurant, and the defendant sat in the front seat while Ms. Williams sat in the rear. The aforementioned male customer stood in the front doorway of the restaurant and continued to exchange words with the defendant.

Ms. Williams stated that at that point the defendant fired a shot from the front seat of the auto towards the restaurant and then fired a second time. The shots went through the open front door where several people were standing. Ms. Williams testified that after the first shot the male customer with whom the defendant had been arguing ducked away from the door. She further testified that the man did not have a gun nor did he make any movement with his hand as if he had a gun. She also stated that it did not appear as though the man was going out of the restaurant towards the auto before the shots were fired. At the time he fired the shots, the defendant was sitting inside the auto and the motor was not running. She related that immediately prior to firing the shotgun the defendant had told the male customer to "dance with this." One of the defendant's shots fatally injured another customer, Calvin Beamon, who was inside the restaurant.

At the conclusion of Ms. Williams' testimony the defendant indicated that he wished to withdraw his not guilty plea and plead guilty to the charge. Following a short recess, the State informed the court that in exchange for the defendant's plea it would recommend a sentence of 14 to 20 years imprisonment. Defendant related to the court that he understood the charge and consented to the plea bargain. He also told the

court that he was satisfied with his attorney's handling of the case and declined the court's offer of more time to confer with counsel. The trial court read the indictment to the defendant and admonished him of the possible sentences he could receive as well as the various rights he would be relinquishing by pleading guilty. Defendant again stated that he wished to plead guilty and indicated to the court that his plea was not the result of any threats or promises. The State then set forth the factual basis for the charge which the defendant substantially agreed with.

The trial court accepted the defendant's plea and advised him of his right to a presentence investigation. Defendant waived the presentence investigation and was sentenced to the negotiated term of 14 to 20 years imprisonment.

On March 4, 1976, defendant filed a *pro se* motion to withdraw his guilty plea and the public defender's office was appointed to assist him. Two claims were presented in defendant's amended motion to withdraw his plea of guilty: (1) that he did not receive effective assistance of counsel from Robert Godfrey, and (2) that the factual basis, as presented by the State and through the testimony of Devie Williams, was not sufficient to support the charge because the court, when accepting the plea, had not determined whether defendant had the intent to commit murder.

A hearing was conducted on the defendant's motion on December 23, 1976. Defendant testified that his attorney had only conferred with him once, four months after his arrest, prior to the date on which he pleaded guilty to the charge. At that meeting, defendant told Godfrey that he had fired the shotgun believing that another man was trying to kill him. Defendant related that he had also spoken with Godfrey the day before trial at which time counsel advised him to plead guilty to the charge. He stated that Godfrey had not discussed the defense of self-defense with him, but that he had told the defendant that it was murder. Defendant further stated that Godfrey had not informed him of the lesser offenses of voluntary and involuntary manslaughter. Defendant related that he had not intended to kill the man he shot, but was merely trying to defend himself as he had observed the man unbuttoning his coat as if he was reaching for a gun. He further testified that he had only intended to scare the man when he fired the shotgun in order to give himself time to get away from the restaurant. Defendant told the court that he felt coerced into entering the guilty plea because the court would not allow him to substitute attorneys and because his own attorney had recommended that he plead guilty. Defendant's attorney at the plea proceeding, Robert Godfrey, did not testify at the hearing.

The trial court recounted portions of the defendant's plea proceeding wherein defendant had indicated his satisfaction with Godfrey's services, his understanding of the charge, and his willingness to plead guilty. The

court concluded that an inquiry into the defendant's intent to commit murder had been unnecessary. The court also found that the defendant had been adequately represented by counsel and that his requests for a continuance and new counsel had been dilatory. The court denied the defendant's motion to withdraw his guilty plea and this appeal was taken.

Defendant first contends that the trial court's denial of his motion for continuance and substitution of his attorney was an abuse of discretion. Defendant asserts that his privately retained attorney, Robert Godfrey, urged him to plead guilty and that defendant did so only because he believed that if he had a full trial his retained attorney would not provide him with effective assistance of counsel. The State maintains that the defendant's request for a continuance and the appointment of a new attorney was properly denied by the trial court. It is the State's position that the advice of defendant's attorney that he plead guilty did not constitute incompetence on the part of defense counsel, nor did such advice improperly coerce the defendant into an involuntary plea of guilty.

■■ The right to counsel of one's choice is a fundamental constitutional right, but like all constitutional rights, it is not without limits. (*People v. Koss*, 52 Ill. App. 3d 605, 607, 367 N.E.2d 1040, 1041 (4th Dist. 1977).) The right may not be employed to thwart the administration of justice or to delay prosecution indefinitely. (*People v. Solomon*, 24 Ill. 2d 586, 590, 182 N.E.2d 736, 739 (1962), *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94; *People v. Wallace*, 44 Ill. App. 3d 89, 357 N.E.2d 858 (4th Dist. 1976).) In *People v. Washington*, 41 Ill. 2d 16, 241 N.E.2d 425 (1968), the defendant's request for new counsel on the day of trial because of his dissatisfaction with his attorney was denied. The defendant in *Washington* went to trial more than four months after his privately retained attorney had entered his appearance. The *Washington* court found ample reason for the trial court to require the defendant to proceed to trial with counsel whom defendant had previously chosen and with whom he had expressed no dissatisfaction until the day of trial. Thus, the court found that the denial of the defendant's request for additional time to employ new counsel was proper especially where the defendant had stated no particular need for changing counsel. Similarly, in *People v. Marchese*, 32 Ill. App. 3d 872, 336 N.E.2d 795 (2d Dist. 1975), the court found no abuse of discretion in the trial court's denial of defendant's motion for continuance and dismissal of court appointed counsel where defendant conceded that he was represented by competent counsel and where defendant had failed to establish any prejudicial effect resulting from the denial of his motion. See also *People v. Koss*; *People v. Wallace*.

In the instant case, defendant was represented by counsel of his own choice, Robert Godfrey, who entered the case after the St. Clair County

Public Defender had been appointed to represent the defendant. Godfrey was the defendant's privately retained counsel for approximately five months during which time he filed motions on behalf of the defendant and appeared with him in court twice to obtain continuances. Further, Godfrey had discussed the case with the defendant and explained the alternatives of a bench trial and a jury trial. Godfrey was present in court on February 18, 1976, and there is nothing in the record to indicate that he was unprepared or even that he had been advised of defendant's desire that he withdraw from the case. Godfrey's subsequent cross-examination of Devie Williams demonstrated that he was prepared for the trial and familiar with the facts.

Apparently the defendant did not express any question regarding the adequacy of Godfrey's representation until the day before trial. On the day of trial, the defendant asked for a continuance in order to substitute counsel, yet he gave no justifiable basis for making such change. Nothing in the record supports the defendant's claim of dispute with his counsel or his claim that he was receiving ineffective representation. Defendant did not indicate to the court that he had attempted to retain another attorney, nor did it appear likely that new counsel would be able to appear on his behalf without delay.

Defendant also suggests that his attorney was incompetent because he advised him to plead guilty. Defendant asserts that he feared he would not receive effective assistance of counsel if he insisted on a complete trial, therefore, he contends that he was coerced into pleading guilty. We disagree.

■■ It is well established that the standard for determining incompetency of counsel is whether, on the whole, the representation afforded the defendant was of such low caliber as to amount to no representation at all and to reduce the court proceedings to a farce or a sham. (*People v. Washington*, 41 Ill. 2d 16, 241 N.E.2d 425 (1968); *People v. Hogan*, 7 Ill. App. 3d 689, 288 N.E.2d 486 (3rd Dist. 1972).) Incompetency of counsel is not shown merely where counsel has advised the defendant to plead guilty. (*People v. Schonert*, 123 Ill. App. 2d 392, 259 N.E.2d 359 (5th Dist. 1970).) Further, it has been held that it does not amount to coercion for defense counsel to inform his client of the weakness of his case and the possibility that a long sentence could be imposed if he chose to go to trial. (*People v. Brown*, 41 Ill. 2d 503, 244 N.E.2d 159 (1969); *People v. Payne*, 16 Ill. App. 3d 83, 305 N.E.2d 700 (1st Dist. 1973); *People v. Stringfellow*, 5 Ill. App. 3d 944, 284 N.E.2d 496 (1st Dist. 1972).) Where an accused follows his counsel's advice, whether or not that advice was proper, it does not render a guilty plea involuntary. *People v. Covington*, 45 Ill. 2d 105, 257 N.E.2d 106 (1970).

■■ No showing has been made by the defendant nor demonstrated by

the record that, under the standard expressed in *People v. Washington*, defense counsel was incompetent. In fact, defendant himself conceded Godfrey's competence at the plea proceedings wherein he explained to the court that he understood what Godfrey had told him and was satisfied with the way the case had been handled. We believe that the trial court adequately discharged its duty of considering the merits of defendant's request for a continuance to substitute counsel. The record reflects that the court's decision to deny the defendant's request was based on its consideration of the untimeliness of the request, the competency of defendant's privately retained counsel and the defendant's failure to have contacted substitute counsel by the time of trial. Under these circumstances, we find no abuse of discretion.

Defendant next contends that the trial court erred in accepting his plea of guilty to the charge of murder without informing him of the included offenses of voluntary and involuntary manslaughter and of the defense of self-defense. In this regard, defendant argues that there was an insufficient factual basis to show his intent to kill. Instead, defendant alleges that his mental state was less than that required to support a conviction of murder.

■■ Supreme Court Rule 402(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 402(c)) requires the trial court to determine that a factual basis exists before entry of a final judgment on a guilty plea. Rule 402 does not require strict compliance, but states that there must be substantial compliance with the rule. In making its determination, the trial court may use any portion of the record to find a sufficient factual basis for the plea. (*People v. Ginder*, 26 Ill. App. 3d 295, 324 N.E.2d 703 (5th Dist. 1975); *People v. Kinsley*, 10 Ill. App. 3d 326, 293 N.E.2d 627 (5th Dist. 1973).) In this regard, the element of intent which the defendant claims is not reflected in the record may be established by competent circumstantial evidence. (*People v. Warship*, 59 Ill. 2d 125, 319 N.E.2d 507 (1974); *People v. Richardson*, 32 Ill. 2d 497, 207 N.E.2d 453 (1965).) In *People v. Ginder*, the defendant alleged that the factual basis failed to establish an essential element, that the defendant intended to commit murder. This court stated:

> "It is well established that the evidence necessary to establish a factual basis need not equal that quantum of evidence necessary to convict. The purpose of Rule 402(c) is to have a judicial determination made that the crime charged has in fact been committed and that the defendant committed it." (26 Ill. App. 3d 295, 299, 324 N.E.2d 703, 707.)

While Rule 402(c) imposes a duty on the trial court to determine whether a valid factual basis for the plea exists, it does not require the trial court to ferret out possible defenses for the defendant. *People v. Burgess*, 34 Ill. App. 3d 966, 342 N.E.2d 407 (2d Dist. 1975).

■■■ Supreme Court Rule 402(c) also does not require the trial court to inform the defendant of possible lesser included offenses or to inquire into the mental state of the defendant if it is otherwise shown in the factual basis of the plea. To justify a conviction of murder, it is not necessary to show that an accused deliberately formed the intent to kill; instead, "it is sufficient to imply intent to murder by showing that he voluntarily and willfully committed an act, the direct and natural tendency of which was to destroy another's life." *People v. Walden*, 43 Ill. App. 3d 744, 752, 357 N.E.2d 232, 239 (1st Dist. 1976).

■■ The mental state necessary for the conviction of murder need only be a knowledge or intent that the acts performed by the defendant created a strong probability of causing death or great bodily harm (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(2)). In the instant case, we are of the opinion that the requisite mental state of the defendant can be sufficiently inferred from the circumstances surrounding the shooting of the man in the restaurant by the defendant. Defendant had taken a sawed-off shotgun to the restaurant, assembled it, loaded it and hidden it in a towel. He became engaged in an argument with another customer and then retreated to his automobile where he unwrapped the shotgun and shot at this unidentified customer. Although the defendant alleged at his motion to withdraw hearing that he was just trying to get away from that man, he did not start the car nor have his friend Otis Williams do so. Instead, he shot twice in the direction of the man who was standing in the doorway. As he shot, defendant told the man to "dance with this." We believe that the foregoing, not disputed by the defendant, together with the other circumstances evident in the factual basis show that the defendant was acting with a wanton and reckless disregard of human life which denotes malice sufficient to show the requisite intent to kill to support a conviction of murder.

Further, this requisite mental state of intent to kill is shown in the facts of the instant case even though defendant killed a person other than the one he was allegedly trying to scare. The law is well settled that where a person shoots at one with intent to kill or murder, but kills one whom he did not intend to injure, he is not absolved from answering to the crime of murder. (*People v. Marshall*, 398 Ill. 256, 75 N.E.2d 310 (1947).) This court has held that where a person without legal justification or excuse, shoots at one individual and inadvertently kills another, he is guilty of the same degree of unlawful homicide as if he had killed the object of his aim. (*People v. Adams*, 9 Ill. App. 3d 61, 291 N.E.2d 54 (5th Dist. 1972).) Both the testimony of Devie Williams and the answers of the defendant in the instant cause indicate that the defendant intended to shoot the shotgun toward the restaurant door. Further, the testimony of Ms. Williams strongly indicates that the defendant was not acting in self defense.

We conclude, therefore, that the trial court sufficiently complied with the requirements of Supreme Court Rule 402(c) and find that there was a sufficient factual basis to support the defendant's plea to the charge of murder.

For the reasons stated above, we affirm the judgment of the Circuit Court of St. Clair County.

Affirmed.

JONES, J., concurs.

FRIEDMAN, J., dissents.