THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MOSES ELDER, Defendant-Appellant.

First District (4th Division)    No. 77-1820

*Opinion* filed May 31, 1979.

Lamont Cranston Strong, of Chicago (P. Scott Neville, Jr., of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, J. Jonathan Regunberg, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Moses Elder, was convicted after a jury trial, of armed robbery and sentenced to a minimum of four years and a maximum of six years' imprisonment. He has appealed contending that (1) the court erred in denying his motion for a continuance and (2) he was denied a fair trial due to the incompetency of counsel.

We find no error and affirm.

At trial the only occurrence witness was the complaining witness Walter Clark. He testified that he had known Elder for about a year and a half prior to the robbery, although he did not, at that time, know his last name. At about 6 p.m. on July 31, 1976, he was at Cicero and Adams talking to some friends. Elder came by in his car and suggested Clark join him. Elder said he was looking for a friend who owed him some money. They drove to 5803 West Madison, parked and went into a tavern. His friend was not there. They were in the tavern less than five minutes and did not have a drink. When they returned to the car, it would not start so they took a bus back to Clark's car. They then drove in Clark's car to 1133 LeClaire because Elder wanted to get some money from his sister-in-law for a starter. Elder got out of the car and went upstairs for about 30 to 40 minutes. Clark sat there waiting for him and blew the horn a couple of times. He did not fall asleep. Elder came out and told Clark his sister had a $20 bill. Elder asked Clark to give him enough money to give her so he could get the bill. Clark gave him $4 or $5. Elder went back upstairs and was gone for about 15 to 20 minutes. He returned with another person;

Clark never looked at that person and would not recognize him if he saw him. That person stood next to the driver's side of the car. Elder walked along the front of the car to the passenger side, leaned in the passenger side, pressed a short-handled butcher knife to Clark's side and told Clark to empty his pockets. He also told Clark the other man had a gun. Clark gave Elder his (Clark's) wallet which had about $35 or $40 in it. Both men ran and Clark left.

Clark did not report the occurrence that night but waited until the next day when he obtained Elder's last name from Elder's roommate. The robbery was finally reported at 2 p.m. August 1.

Several police officers also testified as to the details of Clark's complaint, the investigation and the arrest. The testimony revealed several discrepancies between Clark's testimony at trial and statements he made to the police, including the time of the robbery, the amount of money taken, why they went to the LeClaire address, and whether he told the police the other man had a gun. (Clark said he had, the officer in question denied it.) Furthermore, it appears that although he sat in front of the LeClaire address for an hour he was vague as to the building. Also, while Clark denied he had been drinking on either July 31 or August 1, the police officer who took the report testified Clark had been drinking and his eyes were bloodshot.

There was one other witness for the prosecution, a Joseph DeRose, who simply testified that Clark obtained a replacement union card on August 3.

The defense called only one witness: Marc Miller, an assistant public defender. He had been present at an interview with Clark in the State's Attorney's office. Clark's statement in that interview varied in several respects from that at trial, including the length of time he had known the defendant, whether they were drinking buddies, and the reason they went to 1133 North LeClaire.

In his final argument the defense counsel emphasized these discrepancies plus the implausability of Clark's story. Nevertheless, the jury found Elder guilty.

## I.

The defendant's first contention is that the court abused its discretion when it denied the defendant's motion for a continuance on the day of trial.

On August 10, 1977, the case was called for trial. Before the jury selection commenced the defendant asked for a continuance on three grounds:

1. he had come to court from work and had he known a jury was going to be selected he would have dressed up;

2. he might want to call Dorothy Harris Elder as a witness, although she probably would not testify;

3. he is employed.

The judge, noting that this was the seventh time the case had been set for trial, denied the motion.

■■ As we stated in *People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 560, 97 S. Ct. 1141, and *People v. Jefferson* (1976), 35 Ill. App. 3d 424, 342 N.E.2d 185, the granting of a continuance to allow preparation of a case is largely within the sound judicial discretion of the trial judge and his ruling will not be disturbed without showing an abuse of discretion. And where a motion for the continuance assigns no proper ground, the denial of the motion is not error. *(People v. Wilson* (1963), 29 Ill. 2d 82, 193 N.E.2d 449, *cert. denied* (1964), 377 U.S. 955, 12 L. Ed. 2d 499, 84 S. Ct. 1634, *rehearing denied* (1964), 379 U.S. 873, 13 L. Ed. 2d 81, 85 S. Ct. 22.) None of the three reasons set forth in the record are proper grounds for a continuance. The first reason was that the defendant needed to change his clothes. The defendant, however, was aware that the case was set for trial on the day in question and could have worn other clothes if he so desired. He chose, instead, to appear in work clothes. Moreover, we cannot agree that his wearing work clothes was somehow prejudicial to his defense. To the contrary, it would more likely be to his benefit in that the clothing might well convey the image of a hard working citizen of the community. The second reason was that he might want to call Dorothy Elder as a witness. But there was no suggestion that she was unavailable as a witness or that a continuance was needed so that she could be obtained. Nor was there any suggestion that counsel had diligently tried to secure her presence. (See *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.) Dorothy's name was added to the list of witnesses so that she could have been called to testify if counsel had so chosen. The third reason given, that the defendant was employed, is patently without merit.

The defendant, however, contends that what counsel meant to give as the third reason was that since defendant was now employed he no longer wanted the attorney appointed by the court but wanted to retain counsel of his own choosing. The trouble with this contention is that it is not in the record and on a direct appeal we are limited to what appears in the record. *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649.

■■ ■ But even if we assume that the defendant did move for a continuance in order to employ a different attorney, one chosen by him, we find *no error. It is true that the right to counsel is a fundamental constitutional right, but like all constitutional rights it is not without limits. (People*

*v. Johnson* (1978), 66 Ill. App. 3d 84, 383 N.E.2d 648; *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040; *People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 560, 97 S. Ct. 1141.) This right may not be employed to thwart the administration of justice or to delay prosecution indefinitely. (*People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94.) It must be balanced against other concerns such as the fair and prompt administration of justice. As the Third Circuit Court of Appeals stated in *United States ex rel. Carey v. Rundle* (3d Cir. 1969), 409 F.2d 1210, 1214-15, *cert. denied* (1970), 397 U.S. 946, 25 L. Ed. 2d 127, 90 S. Ct. 964, quoted in *People v. Spurlark* (1978), 67 Ill. App. 3d 186, 197, 198, 384 N.E.2d 767, 775:

> "Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. The calender [*sic*] control of modern criminal court dockets, especially in metropolitan communities, is a sophisticated operation constantly buffeted by conflicting forces. * * * That delays and postponements only increase the reluctance of witnesses to appear in court, especially in criminal matters, is a phenomenon which scarcely needs elucidation.

> Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. * * *

> This is not to say that there should be an arbitrary and inelastic calendaring of cases without due regard, for example, to the existence of conflicting demands for the service of a particular counsel by different courts or by the schedules within a multi-judge court. In judicial administration, too, there should be no absolutes. It is the trial judge who must balance the conflicting demands of court administration with the rights of the accused, conscious, however, that when he considers the rights of those accused of crime, he must consider not only those involved in the case immediately before him but also those of other defendants awaiting trial whose rights may be affected by the consequences of trial delay.

> What is demanded here is the exercise of judicial discretion in the exquisite sense. The trial judge must avoid the Scylla and Charybdis of extremes."

Accordingly, it has been ruled by this court in *People v. Williams*

(1976), 39 Ill. App. 3d 449, 454, 350 N.E.2d 135, 140, 141, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 560, 97 S. Ct. 1141:

> "A defendant with court-appointed counsel who, on the day a case is set for trial, requests a continuance so he can obtain a lawyer of his choice, must do more than say he is not ready. He must, promptly and with some clarity, give a reason why he wants another lawyer. He must make an ascertainable showing that he, or someone for him, will be able to obtain other counsel."

(See also *People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425.) Furthermore, it has been held that unless the new counsel was specifically identified and stands ready, willing and able to make an unconditional entry of appearance instanter, it is not an abuse of discretion to deny a motion for a continuance. *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040.

It is obvious from the record that the defendant never gave any reason why he needed to change attorneys or indicated that he would be able to obtain one promptly. It is true that new counsel was secured a week later and that counsel entered his appearance in the case, and handled the post-trial proceedings. But it is clear from that attorney's own affidavit that he could not have entered his appearance instanter since on August 11 he was involved in another case. Nor did the defendant at trial name the person he desired to have as counsel.

The appellant argues that it was unreasonable for the trial judge to deny the motion simply because he "didn't have anything to do at this moment," and the defendant should not be rushed to trial to accommodate the State or the court, citing *People v. Clayborne* (1977), 47 Ill. App. 3d 202, 361 N.E.2d 1141, *appeal denied* (1977), 66 Ill. 2d 632, and *People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167. Neither case is in point. It is true that reversible error was ruled to have occurred when the trial court denied continuances requested on the date of hearing but neither involved a jury trial and both involved special circumstances. In *Clayborne*, the motion was made on the day of a hearing on a motion to revoke probation. The defendant who was represented by the public defender wished to be represented by a lawyer who had been hired to represent him on the criminal charge which was also the basis for the motion to revoke. The reviewing court noted that it would be frustrating to have different attorneys who might have inconsistent theories of defense. In *Payne*, the defendant had retained an attorney who had entered an appearance on record. However, he was out of town on the day of trial. The trial court conditioned any continuance on a 10-fold increase in bond. In the face of that the defendant who had requested a three- or four-day continuance asked to go to trial immediately and a public defender, who, of course, had not prepared the case was assigned.

## II.

The defendant's second contention is that he was denied a fair trial by the incompetency of counsel, specifically in that:

1. counsel answered ready for trial even though he was served with the State's answer to discovery on the day jury selection began and served with the name of an additional witness the following day;

2. counsel failed to demand the State file the answer to discovery prior to trial;

3. counsel stated that his defense would be the State's inability to prove guilt before discovery was received from the State;

4. counsel failed to subpoena a material witness;

5. counsel failed to call Dorothy Elder as a witness;

6. counsel failed to exercise diligence in investigating the case and thus failed to discover that there were two alibi witnesses, Lessie Dardon and Cleo Elder;

7. counsel relied as a defense on his contention that the State failed to prove the defendant's guilt.

As was stated by the court in *People v. Jackson* (1976), 41 Ill. App. 3d 816, 820, 354 N.E.2d 643, 646, *appeal denied* (1977), 65 Ill. 2d 579:

"Whenever a court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a defendant in a criminal proceeding, the presumption is that counsel is competent. (*United States v. Ragen* (7th Cir. 1948), 166 F.2d 976; *People v. Reeves* (1952), 412 Ill. 555, 107 N.E.2d 861.) This presumption will be overcome only by strong and convincing proof of incompetency. (*Beck v. State* (Ind. 1974), 308 N.E.2d 697.) In order to warrant a reversal, because of incompetency of counsel, actual incompetence must be clearly established and substantial prejudice result therefrom without which the outcome would probably have been different. (*People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810; see also *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416.) It has also been held that a claim of prejudice cannot be based on mere conjecture. (*Witherspoon; People v. Thomas* (1972), 51 Ill. 2d 39, 280 N.E.2d 433.) While it has been said that for a defendant to have been denied effective assistance of counsel, it must be shown that what was or was not done by the defendant's attorney made the proceedings 'a farce and a mockery of justice shocking to the conscience of the Court' (*O'Malley v. United States*

(6th Cir. 1961), 285 F.2d 733-734), this heavy standard was not meant to be an impenetrable obstacle to a meaningful analysis of the facts of any particular case (*United States v. Hager* (8th Cir. 1974), 505 F.2d 737). Thus, the 'mockery of justice' standard is not to be taken literally, but rather is to be employed 'as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness.' (*McQueen v. Swenson* (8th Cir. 1974), 498 F.2d 207, 214.) In the final analysis, the question of whether or not a defendant was adequately represented by competent counsel must be answered solely from the circumstances of each particular case. *Witherspoon; People v. Harper* (1969), 43 Ill. 2d 368, 253 N.E.2d 451."

We are aware that in several recent decisions (*e.g., People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164), our supreme court has considered but not adopted the standard set forth in *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, 640, 641, *cert. denied sub nom. Sielaff v. Williams* (1975), 423 U.S. 876, 46 L. Ed.. 2d 109, 96 S. Ct. 148.) (Justice Clark, however, urged in *Murphy* that the standard be adopted.) *Twomey* applied the test whether counsel's conduct was short of the expected professional standard of competent counsel. The Illinois Supreme Court not having adopted the *Twomey* standard, we will not attempt to do so but do hold that our conclusion would be the same even if that standard were applied.

The defendant's first two complaints are that counsel answered ready for trial even though he was served with the State's answer to discovery on the day jury selection began and was served with the name of an additional witness the next day and that counsel failed to demand the State file the answer prior to trial. The defendant does not point to any specific fact showing prejudice but simply says counsel could not have been prepared for trial, could not have effectively participated in the *voir dire* examination of the jury, in cross-examination of witnesses, prepare an opening and closing statement and invoke a defense without full discovery from the State. The *voir dire* examination is not in the record and cannot be considered. Since the answer was filed on August 10 and the trial itself did not begin until August 11, counsel had a full day to study the answers. If the fact that counsel was appointed on one day and the trial commenced on the next does not serve to demonstrate, *as a matter of law*, that counsel did not have adequate opportunity to consult with his client, appraise defense strategy and prepare to proceed accordingly (*United States v. Trigg* (7th Cir. 1968), 392 F.2d 860, *cert. denied* (1968), 391 U.S. 961, 20 L. Ed. 2d 874, 88 S. Ct. 1863), then still more clearly does the fact the answer to discovery was not filed until the day of jury selection

fail to demonstrate, *as a matter of law*, that counsel did not have an adequate opportunity to prepare his case. Nor is it true that the State's delay in filing the answers prejudiced the case as a matter of law (*People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438; and compare *People v. Smith* (1976), 42 Ill. App. 3d 109, 355 N.E.2d 601, *appeal denied* (1977), 65 Ill. 2d 579, and the cases cited by the defendant, *People v. Brown* (1973), 13 Ill. App. 3d 277, 300 N.E.2d 831, and *People v. Jefferson* (1976), 35 Ill. App. 3d 424, 342 N.E.2d 185, do not so hold. In both cases cited, defense counsel sought a continuance which was erroneously denied. In *Brown*, the State filed a list of 28 witnesses 20 days before trial. Defense counsel although not dilatory was unable to complete the investigation of these witnesses before trial. In *Jefferson*, defense counsel was appointed on the day the case was set for trial. She immediately moved for a continuance until such time as she received full discovery. This was denied and counsel, although she had stated she was unprepared and even attempted unsuccessfully to withdraw from the case for that reason, was forced to try the case that day. She received the grand jury and police reports on the day of trial; she did not receive the preliminary hearing transcript until one week after trial. Under the extreme circumstances involved in both cases, this court held the motions for continuances should have been granted. However, we held in *People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 560, 97 S. Ct. 1141, that the fact that defense counsel is served with the names of a few new witnesses on the day of trial will not automatically give the defendant a right to a continuance where the State's Attorney makes the witnesses available to the defense. Likewise, our supreme court held in *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438, that the State's failure to furnish the pretrial statements of the witness to the defense until after he testified was not so prejudicial as to require reversal, the court noting that there was no effort to recall the witness for further cross-examination. And in *People v. Smith* (1976), 42 Ill. App. 3d 109, 355 N.E.2d 601, *appeal denied* (1977), 65 Ill. 2d 579, it was held that the State's failure to comply with discovery at all did not merit reversal where it was not shown that there was any testimony or reports which defendant was unable to utilize at trial or with which he was surprised.

The same is true here. A perusal of the record reveals that counsel thoroughly and ably cross-examined the prosecution witness and vigorously argued the evidence to the jury. The State's answer to discovery simply listed Clark's name and those of the police officers who testified and referred counsel to the police reports. Counsel during trial showed himself fully familiar with the contents of these reports. The

witness whose name was added on August 11 was DeRose. His testimony was not important and counsel was given opportunity to interview him. For us to conclude under these circumstances that counsel was unprepared because of the delay in discovery would not only be pure speculation but would be contrary to the record.

The defendant's third contention, that counsel was incompetent in indicating his line of defense before discovery was returned, is patently frivolous. While such a statement was filed, the assistant public defender who appeared of record at the time of filing and who caused the statement to be filed was not trial counsel, but an assistant public defender, Marc Miller, who later appeared at trial as a witness for the defense.

■■ The defendant's fourth and fifth complaints are that counsel was incompetent in failing to subpoena a material witness, and in failing to call Elder as a witness. Since, however, he fails to identify the witness who was not subpoenaed and nothing in the record indicates the nature of the testimony of either witness, any determination of prejudice must be based on pure speculation. But a claim of prejudice cannot be based on mere conjecture. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) Moreover, as we shall discuss below, the determination whether or not to call a witness is generally merely one of trial tactics not reviewable by this court.

■■ The defendant's sixth complaint is that counsel failed to discover that there were two alibi witnesses: Lessie Dardon and Cleo Elder. There is in fact nothing in the record showing whether counsel did or did not know of their existence. But even if he did not, knowledge of the existence of alibi witnesses was peculiarly within the knowledge of the defendant himself. If he failed to cooperate with counsel by informing him of their existence, then he cannot now complain that counsel did not know of them. As the Illinois Supreme Court remarked in *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94, it would be a strange anomaly if accused could refuse to aid or cooperate with counsel and then on review advance counsel's lack of preparation as a ground of incompetency.

Defendant's final contention is that counsel's defense of relying on the inability of the State to prove the defendant's guilt amounted to no defense at all and prejudiced the defendant. Defendant contends that since he and the complainant were friends, the only way he could have established his innocence, was to personally explain his whereabouts on the evening of the crime or have his alibi witnesses explain his whereabouts and since this was not done, it was not surprising that he was convicted.

■■ We have already pointed out there is nothing in the record to show

that Dorothy Elder was an alibi witness or that counsel was informed of the existence of the other two witnesses. But even if he did know of them, the determination whether or not to call a witness is generally a matter of trial strategy (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Jordan* (1978), 61 Ill. App. 3d 117, 377 N.E.2d 1123; *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649), and it is well settled that a review of appointed counsel's competency does not extend to those areas involving the exercise of judgment, discretion or trial tactics. *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Thompson* (1978), 66 Ill. App. 3d 141, 383 N.E.2d 690; *People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721; *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649.

Counsel may well have decided that the best defense was to emphasize the many discrepancies in the various versions of Clark's story coupled with the fact that under oath he repeatedly stated what he had told the police officers yet the officers testifying for the State contradicted his testimony, the vagueness of parts of his story, the absurdity of robbing someone who has known the robber for a long time (compare *People v. Urban* (1949), 403 Ill. 420, 86 N.E.2d 219), and the seeming absurdities of parts of Clark's story such as that the defendant reached in the car on the *passenger* side and held a knife against Clark's side and the fact that Clark said he had not been drinking yet his eyes were bloodshot. Counsel might further have concluded that if he introduced alibi testimony he would be focusing the jury's attention not on the weaknesses of Clark's story but on the defendant, thus, *inter alia*, drawing the jury's attention to the fact that while others testified as to where Elder was that night, Elder himself did not take the stand (he risked being impeached by his record if he did). Furthermore, it was for counsel to decide if the alibi testimony was strong or weak. Counsel had no duty to manufacture a defense if in fact none existed. *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649. ■■ Counsel may have guessed wrong in determining how the defense should have been handled but defendant is not entitled to a perfect or successful defense, only a competent one. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Moreover, the fact that another attorney in the better light of hindsight might have handled the trial in a different manner is not an indication of the trial counsel's incompetence. *People v. Robinson* (1979), 70 Ill. App. 3d 24, 387 N.E.2d 1114.

Accordingly the judgment is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.