THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANDREW CRAWFORD, Defendant-Appellant.

First District (4th Division)  No. 61636

Opinion filed April 6, 1978.

Arnette R. Hubbard and Theodore M. Becker, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul Benjamin Linton, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Andrew Crawford, was convicted of the charge of burglary and the charge of unlawful use of a weapon within 5 years of his release from the penitentiary. (Ill. Rev. Stat. 1973, ch. 38, pars. 19—1, 24—1(a)(4), 24—1(b).) He was sentenced to concurrent terms of 6 years and 4 months to 20 years and 3 to 10 years respectively.

On appeal, defendant contends: (1) he was denied a fair trial by the admission into evidence of a certain incriminating statement and by denial of his motion to suppress this statement in violation of the rule that when the voluntary nature of a confession is brought into question, the State must produce all material witnesses at the motion to suppress; (2) he

was denied a fair trial by the admission into evidence of identification testimony which resulted from a suggestive showup shortly after his arrest; (3) he was arrested without probable cause and denied his Fourth Amendment right to be free from unreasonable searches and seizures; (4) his court-appointed counsel was incompetent; (5) he was denied a fair trial because the State introduced immaterial evidence to prove a point not then in issue; and (6) he was not proved guilty of burglary beyond a reasonable doubt.

We affirm in part and remand for resentencing.

Samuel Bressi testified that on October 13, 1973, he occupied room 779 at the Sheraton O'Hare Hotel, located near O'Hare International Airport in Chicago. Between 9:30 and 10 p.m., he returned to his room for the night, unlocked the door and walked into the room. He observed defendant standing a few feet away; his briefcase which he had locked when leaving the room several hours earlier, had been opened and the top flap of the briefcase had been pulled down. Bressi asked defendant what he was doing in his hotel room. Defendant answered that he had entered by mistake. Bressi continued his inquiry because the room had been locked. Defendant merely said it was a mistake and he had not taken anything; defendant then walked past him out the door toward the elevator. Bressi accompanied defendant, asking defendant to stop until someone from hotel security arrived and verified that he had not taken anything.

At this time, Armando Aguilar, one of Bressi's companions on the trip, stepped out of the elevator as defendant and Bressi approached. Defendant entered the elevator, but Bressi held the elevator door open and asked Aguilar to contact hotel security personnel. As Aguilar started down the hallway, defendant took a .38-caliber revolver from underneath his jacket, pointed it at Bressi and told him to get out of the way. Bressi let the elevator door go and started walking down the hallway toward his room as a shot rang out.

Five to ten minutes later, Bressi went downstairs to the lobby with Aguilar. At the front desk, a security officer working for the hotel asked him to come into an office where he observed the defendant and one or two other hotel employees. Bressi informed the security officer that defendant was the man he had seen on the seventh floor. It was determined that none of Bressi's possessions were taken from the room.

Armando Aguilar testified that when he got off the elevator he saw Bressi and the defendant walking toward him and heard Bressi say, "Well, if you didn't take anything from my room, do you mind if we have someone come up to my room and search it to make sure nothing is missing?" Defendant said he did not object to having the room searched

and Bressi asked Aguilar to call the operator. Defendant entered the elevator but Bressi was holding the elevator door. Aguilar turned around and heard, "Watch out! He's got a gun!" He then heard a loud explosion and ran toward Bressi's room. After the hotel operator was called, they went downstairs to the desk. He then went to the office and identified defendant as the man he had seen with Bressi near the elevator on the seventh floor.

Chicago police officer Richard Kozak testified that on October 13, 1973, he was employed part-time as a security officer at the Sheraton O'Hare North Hotel. He was paged and spoke on the housephone located in the hotel lobby with the hotel operator at the main switchboard. He was informed a shot was fired on the seventh floor of the hotel and the person who did the shooting was described as a male Negro. As he was talking on the phone, he observed defendant, a black man, running through the lobby to the first set of exit doors. The defendant was running from the direction of the elevators servicing the first through eighth floors. The officer put down the phone and called to defendant to stop, because he wanted to talk to him. Defendant briefly glanced back, then started through the second set of exit doors. The officer pursued defendant outside into the parking lot where he placed him under arrest and performed a patdown search of defendant which disclosed a .38-caliber revolver in defendant's pocket. The weapon had five live cartridges and one spent cartridge. He then took defendant to an office adjacent to the front desk where he conducted a further search and discovered a .25-caliber automatic which was loaded with six bullets. Both weapons and the ammunition were received in evidence.

A short time later Officer Kozak observed Samuel Bressi standing in an office adjacent to where defendant was being held, and Bressi stated defendant was the man who had shot at him.

Chicago police officer James Gaynor, assigned to the Chicago Police Department Crime Laboratory, Firearms Identification Unit, testified that he test-fired a bullet from the .38-caliber gun taken from defendant and compared it with the portion of the bullet recovered from the elevator by Officer Kozak. Based on these tests, in his opinion, both bullets were fired from the same weapon.

Outside the presence of the jury, the parties stipulated that on November 14, 1972, defendant entered a plea of guilty to burglary and was released from the penitentiary within 5 years of the occurrence of the offense specified in section 24—1(b) as alleged in the indictment in this case. The jury was instructed that the State had to prove that defendant knowingly carried a pistol or pistols concealed on or about his person. By agreement, the previous burglary conviction of November 14, 1972, was not brought to the attention of the jury.

Opinion

## I

■■ Defendant first contends his conviction should be reversed because the State did not call a police officer who was allegedly also present when defendant made a certain incriminatory oral statement. Defendant contends this violates the rule that when the voluntary nature of a confession is brought into question by a motion to suppress, the State must produce all material witnesses connected with its taking or explain their absence. (*People v. Smith* (1974), 56 Ill. 2d 328, 332, 307 N.E.2d 353.) The court found defendant's statement was given after a full and comprehensive warning of his rights and was given voluntarily. At trial, the State never introduced any incriminatory statement made by defendant. Therefore, defendant was not prejudiced and consequently, this issue is without merit. *People v. Novak* (1965), 33 Ill. 2d 343, 346-47, 211 N.E.2d 235.

## II

■■ Defendant maintains that the admission of the identification testimony of Samuel Bressi and Armando Aguilar denied him due process because it was the result of a suggestive showup. The State responds that the procedure was not improper and that the in-court testimony was admissible because the evidence established a basis for the identification independent of the allegedly impermissible and unnecessarily suggestive confrontation. Prompt identification of a suspect by a witness or a victim near the scene of the crime has been upheld, most recently in *People v. McKinley* (1977), 69 Ill. 2d 145, 152-53, 370 N.E.2d 1040. The court there discussed *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, in which the United States Supreme Court stated that "reliability" is the key to determining the admissibility of identification testimony based on the factors set forth in *Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382, which are:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (432 U.S. at 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.)

In this case, Bressi observed defendant both in his hotel room and as they walked down the corridor toward the elevator. Aguilar observed defendant before leaving the elevator and while he held the door for defendant who was coming down the corridor with Bressi. No other persons were present during this time and there is no indication in the record that the attention of these witnesses was otherwise distracted. Within approximately 10 minutes of the crime, both witnesses observed

defendant in custody in a room adjoining the hotel lobby. Both identifications appear to have been unhesitating and positive both in the hotel and at trial. As the court observed in *People v. McKinley* (1977), 69 Ill. 2d 145, 153, 370 N.E.2d 1040, some element of suggestiveness is difficult if not impossible to avoid in any such one-on-one confrontation. However, under the circumstances of this case, we conclude that the identification testimony of these witnesses was reliable and that it was properly admitted into evidence.

### III

■■ . Defendant contends his rights under the Fourth Amendment of the Federal Constitution were denied because he was arrested without probable cause and searched. Prior to trial, defendant moved to quash his arrest and to suppress evidence that resulted from his arrest at the hotel. At the hearing, Officer Kozak testified in substantial accord with his trial testimony heretofore set forth. In addition, Officer Kozak testified that, as he pursued and apprehended defendant outside the hotel, defendant put his hand inside his jacket in a movement clearly suggesting he was reaching for a weapon. The officer, who had already drawn his weapon, told defendant to put his hands over his head or he would fire. As previously noted, the officer then conducted a patdown search of defendant and discovered the weapon in defendant's jacket pocket in the area where he had seen defendant reach.

Defendant testified at the hearing that he was outside the hotel when the officer came up and the officer pulled a gun on him. Defendant denied ever being in the hotel. The trial court denied defendant's motion and stated it believed the officer's testimony.

The State contends that the arresting officer had reasonable grounds to believe that defendant was committing or had committed an offense. (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c).) Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing defendant has committed an offense and such facts may constitute something less than evidence which would result in a conviction. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) The officer observed a black man running through the lobby of the hotel heading for the front entrance of the hotel at the same moment when the hotel operator was telling him that on the seventh floor of the hotel a black man had a gun and that shots were fired. He observed that defendant was running from the area of the bank of elevators that serviced the seventh floor. When he called out to defendant, defendant refused to stop, and the evidence indicated he saw the officer and heard the officer's request.

Defendant's further flight and his movements when stopped, indicating he was reaching for a gun, established probable cause for the officer to believe that defendant was committing a weapons offense.

The patdown search of defendant's person was also justified under the Illinois stop and frisk law (Ill. Rev. Stat. 1975, ch. 38, pars. 107—14, 108—1.01) which authorizes a police officer to stop a person for temporary questioning when the circumstances reasonably indicate the person is committing or is about to commit or has committed an offense. The statute authorizes a limited search when upon stopping the defendant it is reasonable for the officer to suspect he is in danger of attack. Under this statute the inference that an offense has been committed must be based on "more substantial facts and circumstances than would support a mere hunch, yet less substantial those those necessary to support a finding of probable cause to arrest or search the defendant." (*People v. McGowan* (1977), 69 Ill. 2d 73, 77-78, 370 N.E.2d 537, 539; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The search in this instance was lawful and defendant's rights were not violated by the admission into evidence of the results of that search.

## IV

Defendant also contends that his court-appointed trial counsel was incompetent and he was denied his Sixth Amendment right to counsel. A conclusion of inadequate representation can be reached only by demonstrating actual incompetence of counsel and substantial prejudice. Matters going to the exercise of judgment and discretion and trial tactics are insufficient to establish incompetence of counsel. *People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17.

The record in this case shows that prior to trial, defendant's counsel filed a written motion to quash defendant's arrest and to suppress evidence resulting from defendant's alleged illegal arrest. The trial court denied this motion after a hearing. Defendant through counsel also filed a written motion to prohibit presentation of evidence of his previous burglary conviction to the jury. This motion was granted. Defendant's bail was reduced on motion of his attorney from $50,000 to $20,000 prior to trial. A further motion for reduction of bail was also made, but denied. Defendant through counsel also filed a motion, which the court granted, to prohibit the State from introducing into evidence or referring to airline tickets and jewelry recovered from defendant's person when he was arrested, on the ground that this evidence was not probative of the issues in this case. A second motion *in limine,* in which defendant through counsel sought to prohibit the State from introducing evidence that he pointed a gun at and threatened a witness and that the gun was fired, was

denied. Counsel also filed a written motion to inspect the grand jury minutes or dismiss the indictment. Although this motion was denied, the record elsewhere reveals that counsel did receive a copy of the grand jury testimony. After the jury was selected, defense counsel informed the court that he had learned that day for the first time that the State had an oral statement of defendant and that he wished to move to suppress this statement. Although the file did not reveal such a motion, the assistant public defender said he had made an oral motion for discovery and had received a preliminary hearing transcript, a grand jury transcript and police reports, and none of those suggested defendant had made a statement. In addition, defendant had told his attorney he had not made a statement. Nevertheless, counsel made an oral motion to suppress this statement, but, after an evidentiary hearing, this motion was denied, although reference to that statement was not made at trial.

■■ Defendant now claims the assistant public defender was incompetent because he did not file a written motion for discovery, failed to quash the suggestive and improper identification of defendant, failed to object to or move for a mistrial when the prosecution openly displayed weapons to the jury and stipulated to defendant's prior conviction which in effect resulted in defendant's conviction of the unlawful use of weapons charge. Defendant, however, has not established that he was seriously prejudiced by any of these actions. Counsel did not file a written motion for pretrial discovery, but as a result either of an oral motion for discovery or of cooperation with the assistant State's Attorney assigned regularly to the court, defendant's counsel obtained, prior to trial, a transcript of the preliminary hearing, a grand jury transcript, and copies of the police report. Any failure of defense counsel to learn about defendant's alleged oral statement earlier in the proceedings was not prejudicial since the State did not introduce this statement at trial. Counsel's failure to attempt to suppress the identification would not have succeeded, and we find no evidence of incompetence in counsel's failure to object or ask for a mistrial because of the fact that weapons were displayed before the jury. We conclude that defendant was not prejudiced by the stipulation to his prior conviction since proof of this would have been a simple matter. As the State notes, by stipulating to defendant's prior conviction counsel successfully prevented the jury from learning of the matter, and as hereinafter discussed this inured to defendant's benefit. Counsel's actions are explainable either as matters of strategy, or because the actions now claimed as incompetency would not have succeeded in any event. The record does not demonstrate incompetence of counsel. (*People v. Virgil* (1977), 54 Ill. App. 3d 682, 687, 370 N.E.2d 74.) In fact, the record clearly discloses that defendant had the benefit of highly skilled, dedicated and able counsel.

## V

■■ Defendant next contends the expert testimony of Officer Gaynor of the Police Crime Laboratory was not material because it was offered to prove a proposition not in issue since other testimony established that the spent cartridge retrieved from the elevator floor was fired by defendant from his .38-caliber weapon. Although the defendant did not object to this testimony, defendant now contends it should have been excluded. Officer Gaynor's testimony established a fact not previously established with certainty, namely, that the bullet Officer Kozak retrieved from the elevator was, in his expert opinion, fired from the .38-caliber weapon obtained from defendant. This evidence was relevant and material since it corroborated the testimony of Bressi and Aguilar that defendant was the man they saw fire a gun on the seventh floor of the hotel, minutes before defendant's apprehension in possession of that weapon. This evidence was properly admitted.

## VI

Defendant next asserts he was not proved guilty beyond a reasonable doubt. Defendant contends the State's proof did not establish the intent required to sustain a conviction for burglary. The defendant argues further that the State failed to prove the *corpus delecti* of burglary because no evidence was introduced that defendant actually committed a theft.

■■ However, the State responds that the defendant's presence inside a previously locked hotel room and the surrounding circumstances and the subsequent events as previously described clearly establishes the defendant's intent to commit the offense of burglary. We agree.

As noted in *People v. Johnson* (1963), 28 Ill. 2d 441, 443, 192 N.E.2d 864, 866:

> "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose."

Additionally, the crime of burglary is complete upon entering with intent to commit a felony or a theft. (Ill. Rev. Stat. 1973, ch. 38, par. 19— 1(a).) It is not necessary to prove that anything was taken. (*People v. Morris* (1972), 7 Ill. App. 3d 1055, 1057, 289 N.E.2d 73.) The absence of

testimony that a theft was actually accomplished is not legally significant in the context of the totality of the evidence presented in this case. We necessarily conclude the defendant was proved guilty of burglary beyond a reasonable doubt.

## VII

■■ Finally, we consider an issue not raised in the briefs concerning the propriety of defendant's conviction and sentence for felonious unlawful use of weapons. In this case, there was a stipulation concerning defendant's prior felony conviction on November 14, 1972, and his release from the penitentiary on September 16, 1973. This stipulation was entered outside the presence of the jury and the jury was not apprised of its contents. The jury was merely instructed that a person commits the crime of unlawful use of weapons who knowingly carries concealed on his person a pistol. (Illinois Pattern Jury Instructions, Criminal, No. 18.01.) It returned a verdict of guilty of unlawful use of weapons, and its general verdict form did not expressly find defendant had committed the offense within 5 years of his release from the penitentiary.

The State, however, must introduce proof of defendant's prior felony conviction before the determination of guilt or innocence by the jury since the prior felony conviction is an element of the offense of felonious unlawful use of a weapon. (*People v. Edwards* (1976), 63 Ill. 2d 134, 140-141, 345 N.E.2d 496; *People v. Hayes* (1973), 15 Ill. App. 3d 851, 857, 305 N.E.2d 283.) In the present case, defendant was not properly proved guilty of that offense. However, we affirm defendant's conviction for the less serious charge of the unlawful use of a weapon and remand for imposition of a proper sentence. *People v. Edwards* (1976), 63 Ill. 2d 134, 140-41, 345 N.E.2d 496.

The judgment of the circuit court of Cook County for burglary is affirmed. Defendant's conviction for the misdemeanor offense of unlawful use of a weapon is affirmed, but the case is remanded for imposition of a proper misdemeanor sentence.

Affirmed in part and remanded.

JOHNSON, P. J., and DIERINGER J., concur.