THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENNIE D. HAYWOOD, Defendant-Appellant.

Third District No. 77-440

Opinion filed November 29, 1979.—Rehearing denied January 15, 1980.

STOUDER, P. J., dissenting.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial in the Circuit Court of Kankakee County, defendant was convicted of murder and sentenced to 14 to 25 years in prison. On appeal defendant contends he was ineffectively represented by counsel and that the jury was improperly instructed on the defense of intoxication.

At approximately 9 p.m. on January 21, 1977, Officer Joseph Marek of the Kankakee County Police found the body of T. C. Brooks lying in the middle of a county road. The officer determined that Brooks was dead and observed two .22-caliber bullet holes near the victim's right breast. A subsequent autopsy revealed that Brooks had, in fact, been shot three times.

At about 10 p.m. on the same night, Corporal Buddy King of the Newton County, Indiana, sheriff's office discovered a 1967 Chrysler auto sitting in the median strip of U.S. Route 41, at a point later determined to be 28.3 miles from the spot where Brooks' body was located. The auto was empty, but Officer King saw defendant standing in the median strip about 50 yards away. As the officer approached him, defendant raised his hands and said, "Don't shoot, don't shoot, I don't have a gun." Defendant smelled of alcohol, his speech was slurred, he had trouble walking and he was covered with snow. Officer King arrested defendant for driving under the influence of alcohol and took him to the Newton County jail, where he was given a breathalyzer test and a field sobriety test. Defendant was unable to perform the physical tasks included in the sobriety test and the breathalyzer test indicated defendant had in excess of .31-percent alcohol in his blood.

After being advised by Kankakee authorities that defendant was wanted in connection with a homicide investigation, Officer King returned to defendant's auto, where he found several shell casings and observed blood stains on the auto's front seat. A partially filled pint whiskey bottle was discovered under the passenger's seat, and a .22-caliber pistol was found in a plastic bag about four feet off the road.

The day after the shooting incident defendant told Officer Joseph Beard of the Kankakee Sheriff's Department that he had been drinking from early in the morning the previous day and was in search of corn whiskey with Brooks and another man when he passed out in his auto, which Brooks was driving, and awoke on the median strip of Route 41 in Indiana. A few days later, however, defendant told Detective Bill Marks that he remembered shooting T. C. Brooks. In a written statement, defendant said he had given Brooks $25 to buy corn whiskey, but passed out in his auto while he, Brooks, and another man were looking for the whiskey supplier. When he awoke defendant was alone in the auto with Brooks who said he had given the $25 to his wife and had not purchased

the whiskey. According to defendant's statement, a fight ensued and he grabbed his .22 pistol out of the ashtray when he feared that Brooks was reaching into his pocket for a gun. As Brooks tried to knock defendant back, defendant's gun went off twice and Brooks was hit with both bullets. Defendant said he left Brooks' body on the road and drove toward his home, but got lost and ended up in Indiana.

At trial defendant said he made the written confession as a result of promises of leniency from police officers and that it was not the truth. His trial testimony was substantially the same as the original story he had given Officer Beard, to the effect that he had passed out while in the auto with Brooks and another man and had awakened on the Indiana highway. Evidence was presented as to defendant's heavy drinking on the day of the murder and his chronic alcoholism.

■■ Although Officer King testified that defendant registered a reading of 0.31 on a breathalyzer test administered the night of the murder, no expert testimony was presented explaining the meaning or significance of that reading to the jury. On appeal, defendant claims the lack of expert interpretation of the breathalyzer results rendered useless what otherwise would have been the strongest evidence in support of the defense of intoxication. Defendant claims his appointed counsel's failure to present such expert testimony constituted a denial of defendant's right to effective assistance of counsel. We do not agree.

"In order to establish lack of competent representation at trial, it is necessary to demonstrate 'actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney' which results in substantial prejudice without which the outcome would probably have been different." (*People v. Goerger* (1972), 52 Ill. 2d 403, 409, 288 N.E.2d 416, 419; *People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873.)

Competency of counsel is to be determined from the totality of counsel's conduct at trial. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355.

In the instant case the only basis on which defendant challenges his counsel's competency is counsel's failure to present expert interpretation of the breathalyzer results. Defendant concedes that considerable evidence was presented of defendant's intoxication at the time of the offense, and notes the testimony of defendant, his wife, his nephew, and a tavern operator who had sold him whiskey on the day of the offense. Two psychiatrists' reports detailing defendant's chronic alcoholism were introduced at trial. In short, more than sufficient evidence was presented for the jury to properly determine the merit of defendant's intoxication defense.

In addition to presenting considerable evidence in support of the

defense of intoxication, defense counsel made and responded to numerous pretrial and post-trial motions, including a motion to suppress evidence and to quash defendant's arrest, a motion to reduce bail, a motion to substitute judges, an answer to the State's motion *in limine*, a motion for directed verdict, and a motion for a new trial. Defense counsel ably cross-examined the State's witnesses and made proper and timely objections to certain of the prosecuting attorney's questions and instructions.

■■ Although defense counsel's failure to introduce expert interpretation of the breathalyzer results may have been an error in judgment, such an error of judgment does not, in itself, constitute ineffective representation of counsel. (*Murphy.*) Based on defense counsel's total conduct at trial, we conclude that defendant was ably and adequately represented.

Defendant next contends the jury was improperly instructed on the defense of voluntary intoxication. Two intoxication instructions were given.

> "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly and intentionally." (Illinois Pattern Instructions, Criminal, No. 24.02 (1968) (hereinafter IPI).)

> "While intoxication may be used to nagative [*sic*] the element of intent when it is extreme, merely being drunk or intoxicated is not a sufficient defense. Only if the Defendant's intoxication is so extreme as to suspend entirely his power of reason, rendering him incapable of any mental action, is that intoxication a defense to the offense of Murder." (Peoples instruction No. 6A.)

Defendant objected to the latter instruction and argues on appeal that it should not have been given because it misstated the law, was in conflict with IPI Criminal No. 24.02, and misled the jury to believe that intoxication was a defense only if it rendered defendant "incapable of any mental action," a phrase which defendant construes as indicating a state of unconsciousness.

The language of instruction No. 6A was taken from *People v. Winters* (1963), 29 Ill. 2d 74, 80, 193 N.E.2d 809, where our supreme court set forth a definition of the defense of intoxication. Although *Winters* has been cited with approval in recent decisions (*People v. Jones* (1978), 67 Ill. App. 3d 477, 384 N.E.2d 523; *People v. Hunter* (1973), 14 Ill. App. 3d 879, 303 N.E.2d 482), there appear to be no cases specifically considering the propriety of using the *Winters'* definition as an intoxication instruction.

In the instant case, we need not decide whether instruction No. 6A, standing alone, would have been a proper intoxication instruction, for the applicable rule is as follows:

> "In considering assignments of error on giving or refusing

instructions they will be taken as a series, and, when so considered, if they together fairly state the law it is not ground for reversal that one or more, standing alone, might be superfluous or misleading." (*People v. Witte* (1932), 350 Ill. 558, 574, 183 N.E.2d 622; *People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144.)

In the case at bar, the jury was given IPI Criminal No. 24.02, which is clearly a proper statement of the applicable intoxication defense. (See Ill. Rev. Stat. 1977, ch. 38, par. 6—3.) The jury was further instructed that it was to consider all of the instructions given and not to single out certain instructions and disregard others. Neither the prosecutor nor the defense argued to the jury that the phrase "incapable of any mental action" was the equivalent of the state of unconsciousness or that the defense of intoxication was available only if defendant was unconscious.

■ We do not believe that any reasonable juror, considering the two intoxication instructions in conjunction, would have concluded that the phrase "incapable of any mental action" required the defendant to be unconscious in order to avail himself of an intoxication defense. On the contrary, we are convinced that any reasonable juror, considering instruction No. 6A in light of IPI Criminal No. 24.02, would have concluded that the phrase "incapable of any mental action" was the functional equivalent of "incapable of acting knowingly and intentionally" as specified in IPI Criminal No. 24.02.

"To require absolute and technical accuracy in instructions would, as a general rule, defeat the ends of justice and bring the administration of the criminal law into disrepute and contempt. It is sufficient when instructions, considered as a whole, substantially and fairly present the law of the case to the jury." (*People v. Banks* (1955), 7 Ill. 2d 119, 129, 129 N.E.2d 759.)

The tandem of intoxication instructions given in this case fairly and accurately presented the defense of intoxication to the jury and no reversible error was committed by the trial court in giving People's instruction No. 6A.

The judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

ALLOY, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I respectfully dissent from the result reached by my colleagues. In my opinion instruction No. 6A, given at the request of the People over the objection of the defendant, was erroneously given and such error is reversible error. Since the majority of the court specifically declined to

decide whether the instruction is or is not erroneous the rationale for the result reached is difficult to understand.

In my view there are three problems with the instructions given. First, there is no justification for giving a non-IPI instruction. Second, the instruction given is not a correct statement of the law. Third, the instruction is in conflict with another instruction which admittedly states the law.

Since the People's instruction No. 6A is admittedly not an IPI instruction, the first issue not addressed by the parties or the majority concerns the propriety of giving a non-IPI instruction. Supreme Court Rule 451(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(a)) states:

> "(a) Use of IPI-Criminal Instructions; Requirements of Other Instructions. Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on the subject should be simple, brief, impartial, and free from argument."

There is an instruction governing voluntary intoxication, IPI Criminal No. 24.02, and this instruction was tendered by the People and given without objection. The majority of the court concedes that this instruction does include the defense of voluntary intoxication and is a correct statement of the law. Thus, merely in terms of the supreme court rule itself, the giving of any non-IPI instruction on the subject of voluntary intoxication is error, and accordingly the instruction should not have been given for this reason alone.

That the trial court gave the instruction raises an implication which suggests not only error, but prejudicial error. The implication is that the IPI instruction is not a correct or adequate statement of the law. Further, two sets of standards are at best confusing. In my opinion the court gave the non-IPI instruction at the request of the People because it believed that under the authority of *People v. Winters* (1963), 29 Ill. 2d 74, 193 N.E.2d 809, the People were entitled to a more stringent description of voluntary intoxication and the court, in so doing, failed to realize the proffered instruction was contradictory to an instruction previously given by the court at the request of the People. This ruling is difficult to understand because nowhere does the trial court in any way intimate that the pattern jury instruction "* * * does not accurately state the law. * * *" (Supreme Court Rule 451(a) (Ill. Rev. Stat. 1975, ch. 110A, par.

451(a).) People's instruction No. 6A employs language from *People v. Winters* (1963), 29 Ill. 2d 74, 193 N.E.2d 809, and the majority, in addition to the *Winters* case, refer to *People v. Jones* (1978), 67 Ill. App. 3d 477, 384 N.E.2d 523, and *People v. Hunter* (1973), 14 Ill. App. 3d 879, 303 N.E.2d 482, which contain such language citing the *Winters'* case. In none of the foregoing cases was the language of instruction No. 6A employed as an instruction. Rather, the observations of the court were editorial in nature and used to refute the defendant's contention that malice or the required intent was not shown in view of the evidence of voluntary intoxication.

According to section 6—3 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 6—3):

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition * * * [n]egatives the existence of a mental state which is an element of the offense * * *."

This is the standard employed in IPI Criminal No. 24.02 and is the standard approved by many authorities. According to *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, the defendant is entitled to show in defense that he was intoxicated to the degree that he was incapable of entertaining the required intent. Furthermore, according to *White*, this has been the rule in Illinois since *Bartholomew v. People* (1882), 104 Ill. 601 and is presently embodied in section 6—3 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 6—3). Nowhere in *White* is there any holding that intoxication must be so extreme that the defendant is incapable of any mental activity, nor is there any intimation that this test is the one historically employed in Illinois.

Finally, requiring intoxication so that the defendant is incapable of any mental activity establishes a higher degree of intoxication than that rendering the person incapable of forming the required intent. If the instructions are contradictory, particularly on a significant element of the offense, the instructions are not only error but reversible error, because it cannot be determined which of the instructions the jury applied. In *People v. Gilday* (1932), 351 Ill. 11, 183 N.E. 573, improper instructions on voluntary intoxication were improperly given to the court at the request of the People, but proper instructions were given at the request of the defendant. This, according to the court in *Gilday*, was reversible error. (See also *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) I believe the same result should occur in this case.

I have no quarrel with the general rule that instructions should be considered as a whole, but neither *People v. Witte* (1932), 350 Ill. 558, 183 N.E. 622, nor *People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144, is authority for approving instructions which are contradictory. In fact in each of the foregoing cases the court held the instructions were

substantially accurate and in fact no error occurred. The difficulty of employing such a rule where the instructions are contradictory is illustrated by the majority's conclusion that because a proper instruction was given any reasonable juror would have read the proper standard into an instruction which on its face means something different. I can not determine and I do not see how the majority can determine which of the contradictory standards the jury applied.

In my opinion only one of the reasons set forth above would be sufficient to conclude that the instruction was erroneously given and the error constituted reversible error. Collectively, they constitute an even more formidable basis for granting the defendant a new trial on account of the reversible error resulting from giving the instruction.