THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY RUPLE, Defendant-Appellant.

Third District   No. 78-315

Opinion filed April 4, 1980.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Timothy Ruple was tried before a jury upon charges of robbery and armed robbery, and following his conviction for both, he was sentenced to imprisonment for a term of four years to four years and one day. On appeal, defendant contends that a knife and his confession were the products of an illegal arrest and should not have been admitted into evidence and that his right to a speedy trial was violated. Neither issue was raised in the trial court.

According to the evidence presented at trial, James Hammett was sitting in his parked camper-truck in Eckwood Park in Peoria during the early morning hours of October 22, 1977, when he was approached by three young men, who were later identified as Leroy Krus, James Thomas and defendant. Krus got into the truck and negotiated with Hammett for the price of a deviate sexual act. The two men were unable to agree upon a price, and thereafter, Krus, Thomas, and defendant pulled Hammett from the truck. Krus punched Hammett, and both Krus and Thomas threatened him with a knife which Thomas took from the dashboard of the truck. Defendant removed a shotgun and CB radio from the truck and unlocked the camper from which Krus removed a tool box. Then they locked Hammett in the camper and departed with the stolen items in their own car. Hammett later escaped from the camper by breaking a window. He gave the police a description of the car and the men involved.

Later that same day, Officers Melvin Little and Larry Layman were told at roll call that Leroy Krus was suspected of an armed robbery and was driving a 1964 or 1965 blue Mercury with red stripes down the sides. About 3:30 p.m. the officers saw a car matching that description. They stopped the car and identified Krus as the driver and defendant as his passenger. Both men were placed under arrest and searched. A knife, later identified as belonging to Hammett, was found in defendant's boot. Defendant and Krus were taken to the police station and interviewed by Detective Charles Cannon to whom defendant gave first an oral and then a written statement describing the robbery.

Defendant said that he and a group of friends had been drinking beer since 8 or 9 p.m. on October 21. In the early morning hours of October 22, having no money to buy more beer, one of the girls suggested that they could "roll a queer" to get money. Defendant, Krus, Thomas, and two girls drove to Eckwood Park. When the three men got out to approach Hammett's truck, the two girls drove away and circled the park until the men signaled for them to return. Defendant described the events of the

robbery, after which he said they returned to his apartment, divided the items taken, and went to bed. About 7 a.m. he and Krus went to a gas station where Krus sold the shotgun for $25. They parked the car at the station and went to sleep. At about 12 noon, a friend of Krus came into the station, and Krus sold him the CB for $20. Krus and defendant were arrested later the same day and jointly charged with robbery and armed robbery.

On January 20, 1978, defendant's motion for separate counsel and his motion for severance were allowed. His request for a continuance was granted, and the cause was set for trial on February 20, 1978. By agreement, the cause was continued to February 22, on which date the Assistant State's Attorney orally moved for another continuance with the following statement:

"Your Honor at this time due to a change in circumstances, that being an anticipated plea now being rejected by the Defendant I am compelled to move for a continuance since acting in reliance on the anticipated plea agreement I have released my witnesses from their obligation to be present here today and I have been unable to get them all back into Court."

The trial was then set for April 10, 1978.

On the day of trial, the court first heard defendant's motion to suppress his confession which alleged that his confession was the result of physical or mental coercion and that he was not informed of all of his rights. Detective Cannon testified that he gave defendant his rights and that defendant did not appear to be intoxicated or tired at the time of his statement. One of the arresting officers also testified that defendant's condition was normal, not intoxicated, at the time of his arrest.

Defendant testified that at the time of his arrest he had not slept for 48 hours, that he had consumed 24 cans of beer and 1½ fifths of whiskey, and had smoked some marijuana since 8 p.m. the night before, that he was tired and intoxicated, that Officer Cannon slapped him 15 times and cut his arm with a tab from a can of pop, that he was not given his *Miranda* warnings, and that he was told he could go to sleep if he gave a written statement.

A police secretary, called in rebuttal, corroborated Officer Cannon's testimony and contradicted defendant's version of the interview. The trial judge announced that he believed the secretary, and the motion to suppress was denied.

At trial the victim James Hammett identified defendant as one of the men who robbed him but said defendant had long blond hair and a mustache at that time. Defendant apparently was clean shaven with long brown hair at trial. Officer Little testified to the circumstances of the arrest. On cross-examination, he indicated that, at the time he stopped the

car and when he searched defendant, he had no reason to suspect that defendant had been involved in the robbery. He said that the search was made after defendant was arrested. Defense counsel then asked, "Why did you place him under arrest?" The prosecutor requested a side bar conference, and after that conference, defense counsel asked no new questions. The knife and confession were admitted into evidence without objection.

At the close of the State's case, defendant took the stand to testify that he was intoxicated, tired and physically abused by police at the time he gave his statement. Both Officer Cannon and the police secretary testified in rebuttal that defendant did not appear tired or intoxicated when he was questioned and that he was not slapped or cut. Officer Cannon pointed out that defendant said in his confession that he went to bed after the robbery and that he slept in the car at the gas station after selling the shotgun. The jury returned a verdict of guilty of robbery and guilty of armed robbery.

On the date set for sentencing, May 26, 1978, defendant's trial counsel was allowed to withdraw because defendant had accused him of incompetency in failing to call witnesses for an alibi defense and for proof that Hammett's knife was found in the car, not defendant's boot. When questioned by the court, defendant admitted that he never told his attorney that he had an alibi or that his confession was false. Later at the sentencing hearing, the court observed that defendant was merely an aider and abettor as to the armed robbery and so he was given the minimum sentence of four years to four years and one day in prison. No post-trial motion was filed, but defendant has appealed.

Defendant first contends that the knife and confession were erroneously admitted into evidence because, by Officer Little's own admission, he lacked probable cause for defendant's arrest and the arrest was, therefore, unlawful. Both the knife found in defendant's boot and the confession he gave at the police station are said to have been the fruits of the unlawful arrest. Defendant acknowledges that no such objection was made at trial, but he suggests that the erroneous admission of evidence would affect substantial rights so as to be plain error within Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)).

■■ Rule 615(a) provides that a reviewing court may consider plain errors or defects affecting substantial rights although they were not brought to the attention of the trial court. However, the rule is not invocable in every case and has been said to allow the court, as a matter of grace, to take notice of errors which deprived the accused of a substantial means of enjoying a fair and impartial trial. (*People v. Killebrew* (1973), 55 Ill. 2d 337, 303 N.E.2d 377.) Here defense counsel, after a sidebar conference

out of the hearing of the jury and the court reporter, abandoned his previous line of questioning Officer Little as to the probable cause for defendant's arrest. Under the circumstances we think counsel chose to forego a challenge to the lawfulness of the arrest as a matter of trial strategy. A similar situation arose in *People v. Morgan* (1976), 39 Ill. App. 3d 588, 350 N.E.2d 27, *affirmed* (1977), 67 Ill. 2d 1, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411, where the defendant contended that his arrest was not based upon probable cause and that as a consequence his subsequent statement was inadmissible. The appellate court held that this issue had been waived and could not be asserted for the first time upon appeal. See also *People v. Hutchison* (1977), 55 Ill. App. 3d 716, 371 N.E.2d 201; *People v. Williams* (1976), 37 Ill. App. 3d 1006, 347 N.E.2d 368.

As this court noted in *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239, the waiver rule is based upon the necessity of an error being brought to the attention of the trial court so the court can have an opportunity to correct itself. (Accord, *People v. Griffith* (1978), 56 Ill. App. 3d 747, 372 N.E.2d 404.) The Illinois Supreme Court has observed:

"The rationale underlying the procedural waiver doctrine is a sound one, based upon the need for timely resolution at trial of evidentiary questions. The salutary consequence of the waiver rule is that 'A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial.' (*People v. Trefonas*, 9 Ill. 2d 92, 98.)" *People v. Thompson* (1971), 48 Ill. 2d 41, 46, 268 N.E.2d 369, 371.

In the case before us, had defendant challenged the lawfulness of his arrest in the trial court, the State would have had an opportunity to present additional evidence justifying the arrest, including the testimony of the other arresting officer, Larry Layman. (See *People v. Mitchell* (1979), 78 Ill. App. 3d 851, 397 N.E.2d 569.) We conclude that defendant waived any objection to the admissibility of his confession and the victim's knife on the ground of an illegal arrest by failing to make that objection at trial.

Defendant next argues that he was substantially prejudiced by incompetent counsel since counsel failed to move to suppress the knife and the confession where it was apparent that the arrest was unlawful for want of probable cause. Defendant attributes counsel's failure to challenge the lawfulness of the arrest to counsel's apparent ignorance of the law, but the record does not support such a conclusion. The trial judge expressly noted that defense counsel conducted the trial in a competent fashion and that nothing happened in court which would in any way show

incompetence. As we noted above, the circumstances under which defense counsel ended the cross-examination of Officer Little are more indicative of an exercise of judgment than of oversight.

In order to establish lack of competent trial counsel, defendant must show actual incompetence in the performance of the duties as a trial attorney which result in substantial prejudice affecting the outcome of the case. (*People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416; *People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1, *cert. denied* (1971), 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386.) Review of trial counsel's competence does not extend to matters of judgment, discretion, or trial tactics. (*People v. Martin* (1970), 44 Ill. 2d 489, 256 N.E.2d 337; *People v. Crawford* (1978), 59 Ill. App. 3d 211, 375 N.E.2d 1314.) The application of this principle has been frequent. Courts have ruled that defense counsel was not incompetent: (1) for failure to secure suppression of a confession (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677); (2) for failure to move to quash the arrest, to object to identification procedures, and to make pretrial discovery motions (*People v. Hawkins* (1974), 23 Ill. App. 3d 758, 320 N.E.2d 90); (3) for failure to move to suppress a confession (*People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873, *conviction aff'd but sentence rev'd* (1980), 78 Ill. 2d 500); and (4) for failure to call a breathalyzer expert witness. *People v. Haywood* (1979), 79 Ill. App. 3d 303, 398 N.E.2d 179.

Obviously defendant's appellate counsel would have handled the trial differently, but competence of trial counsel should be judged from the totality of his conduct at trial, not on the basis of what another attorney thinks he would have done. (*People v. Hall* (1963), 27 Ill. 2d 501, 190 N.E.2d 292; *People v. Robinson* (1979), 70 Ill. App. 3d 24, 387 N.E.2d 1114.) We agree with the following statement in *People v. Elder* (1979), 73 Ill. App. 3d 192, 203, 391 N.E.2d 403, 411:

> "Counsel may have guessed wrong in determining how the defense should have been handled but defendant is not entitled to a perfect or successful defense, only a competent one. [Citation.] Moreover, the fact that another attorney in the better light of hindsight might have handled the trial in a different manner is not an indication of the trial counsel's incompetence."

The court in *People v. Elder* quoted with approval from *People v. Jackson* (1976), 41 Ill. App. 3d 816, 820, 354 N.E.2d 643, 646, where the court said:

> "Whenever a court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a defendant in a criminal proceeding, the presumption is that the counsel is competent. [Citations.] This presumption will be overcome only by strong and convincing proof of incompetency."

We would also observe that defense counsel has no duty to advance specious claims of constitutional deprivation (*People v. Potcher* (1978), 62 Ill. App. 3d 910, 379 N.E.2d 1291), or to manufacture a defense where none exists. *People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873, *conviction aff'd but sentence rev'd* (1980), 78 Ill. 2d 500; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.

In the recent case of *People v. Mitchell* (1979), 78 Ill. App. 3d 851, 397 N.E.2d 569, defendant contended for the first time on appeal that certain evidence was obtained as the result of an unlawful search and seizure and that defense counsel's failure to make a motion to suppress or to object at trial was incompetence depriving defendant of effective assistance of counsel. After noting that the prosecution was not required to prove the reasonableness of the seizure of evidence in the absence of a motion to suppress and that the evidence at trial was not exhaustive, the court said:

"In the posture of this case we do not deem it proper to pass upon the validity of the search. As the failure of counsel to make a motion to suppress is not *per se* incompetence of counsel but depends on the circumstances [citation], we do not see how that question can be answered on the basis of this record. If the evidence was such that the motion would be unavailing, the failure to make it would not be incompetence. We thus conclude that the fourth amendment question of the validity of the search and the sixth amendment question of the adequacy of counsel are not properly before us and we do not pass upon them. If they are supported by sufficient evidence, they can be raised by a post-conviction petition pursuant to which a full hearing can be held and all material and relevant evidence presented." (78 Ill. App. 3d 851, 853-54, 397 N.E.2d 569; 570-71.)

*Mitchell* is factually similar to the case before us, and we believe the disposition of *Mitchell* is controlling here. Hence, as noted above, any question as to the validity of defendant's arrest has been waived, and on the basis of the record, we are not persuaded that the trial counsel was incompetent.

Finally defendant insists his right to a speedy trial was violated since he had been in custody for a total of 170 days when his trial commenced on April 10, 1978. Defendant admits that he caused one delay of 36 days which temporarily suspended the rule, but argues that the remaining 134 days of his pretrial incarceration are grounds for a reversal of his conviction, even though the issue was not raised in the trial court, because the failure to move for discharge amounted to ineffective assistance of counsel. He relies upon *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810, where the defendant's conviction was reversed in a post-conviction proceeding. There the State conceded that, had a timely motion been

made by trial counsel, defendant would have been entitled to release.

The instant case differs substantially from *Morris* because here a timely motion for discharge would not, in all likelihood, have been successful. The record indicates that the final continuance from February 22, 1978, to April 10, 1978, a period of 47 days, was attributable in part to defendant's last minute decision not to plead guilty as he had previously indicated. The April 10 date was the next day available for trial.

The supreme court has said that the facts of each case must be examined "to prevent a 'mockery of justice' either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him." (*People v. Fosdick* (1967), 36 Ill. 2d 524, 529, 224 N.E.2d 242, 246.) In *Fosdick*, the court stated the criterion for determining whether the delay is occasioned by the defendant to be whether the defendant's acts in fact caused or contributed to the delay. (Also *People v. Mrozek* (1977), 52 Ill. App. 3d 500, 367 N.E.2d 783.) In cases where a continuance was granted upon motion of the State because of a delay necessitated by an action of defendant, it has been held that the statute ceases to run even though the motion was made by the State. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) In *Boyce* the court stated the following rule, which is applicable here:

> "Where there are two reasons for delay, one due to the State, and the other due to the defense, the fact that the delay was partly attributable to the defendant is sufficient to toll the statutory term. (*People v. Partee* (1974), 17 Ill. App. 3d 166, 308 N.E.2d 18.)" 51 Ill. App. 3d 549, 554, 366 N.E.2d 914, 918.

In the case at bar, the record discloses two reasons for the postponement of trial on February 22: (1) at the last minute defendant reneged on a guilty plea previously indicated, and (2) the State had released its witnesses from their obligation to appear. Since one reason for the delay was solely due to defendant, the statutory term was suspended for the duration of the delay. This case is similar to *People v. Erbe* (1977), 46 Ill. App. 3d 317, 360 N.E.2d 998, where defense counsel had originally agreed to stipulate to the testimony of two police officers who were out of town, but on the evening before trial was to begin, counsel refused to so stipulate. The State then requested a continuance which was granted. Upon appeal, defendant claimed he was entitled to discharge under the 120-day rule. The appellate court rejected this contention, stating:

> "Under these circumstances it appears that defendant contributed to the delay of the trial by his counsel's handling of the prosecutor's request for a stipulation. Given reasonable notice that defense counsel could not agree to a stipulation, it would have been up to the State to produce the witnesses in time for trial and any delay would have been attributable to the State. By waiting until

the last minute to object, however, defense counsel helped create the need for a continuance." (46 Ill. App. 3d 317, 319, 360 N.E.2d 998, 999.)

The same is true in the case before us. Consequently, defendant would not have been entitled to discharge if his counsel had presented such a motion to the trial court, and defense counsel's failure to indulge in a futile exercise was not incompetency.

For the reasons stated, we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.